IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


**KENNETH A. WALLACE,**                                    Civil No. 10-100-AC

                    Plaintiff

            v.                                            **FINDINGS AND
                                                          RECOMMENDATION**

**MICHAEL J. ASTRUE,**
Commissioner of Social Security

                    Defendant.


ACOSTA, Magistrate Judge:

        Plaintiff Kenneth Wallace ("Wallace") seeks judicial review of the Social Security

Commissioner's final decision denying his application for Disability Insurance Benefits ("DIB")

under Title II of the Social Security Act.  This court has jurisdiction under 42 U.S.C. § 405(g).  The

Commissioner's decision should be reversed and remanded for further proceedings.

## BACKGROUND

        Born in 1952, Wallace applied for DIB on June 1, 2006.  Tr. 96-98.[1]  He alleges disability

_____

        [1]Citations "Tr." refer to indicated pages in the official transcript of the administrative
record filed with the Commissioner's Answer on July 28, 2010 (Docket # 9).

1 - FINDINGS AND RECOMMENDATION

since July 20, 2005 (*id.*), due to  chronic fatigue, heavy metal toxins, Lyme disease, blurred vision,

sleeping problems, and high blood pressure.  Tr. 111.  The Commissioner denied these applications

initially and upon reconsideration, and an Administrative Law Judge ("ALJ") held a hearing on

February 18, 2009.  Tr. 20-58.  The ALJ subsequently found Wallace not disabled on March 25,

2009.  Tr. 11-19.  The Appeals Council accepted additional evidence into the record, but declined

review of the matter on December 23, 2009 (Tr. 1-5), and Wallace now appeals to this court.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps

in determining disability under the meaning of the Act.  20 C.F.R. § 404.1520; *Bowen v. Yuckert*,

482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity.  If

he is, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i).  At step two, the ALJ determines

if the claimant has "a severe medically determinable physical or mental impairment" that meets the

twelve-month durational requirement.  20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii).  If the claimant

does not have such a severe impairment, he is not disabled.  *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a "listed"

impairment in the regulations.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is determined to

equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other

relevant evidence in assessing the claimant's residual functional capacity ("RFC").  The claimant's

RFC is an assessment of work-related activities the claimant may still perform on a regular and

continuing basis, despite limitations imposed by his impairments.  20 C.F.R. § 404.1520(e); Social

Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform his past relevant work at step four. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform his past relevant work, he is not disabled. If the ALJ finds that the claimant's RFC precludes performance of his past relevant work the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1520(f); *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the claimant cannot perform such work, he is disabled. *Id.*

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1520(g); 404.1566.

## THE ALJ'S FINDINGS

The ALJ found Wallace's obesity, mild degenerative changes in the lumbar spine, and syncope[2] "severe" at step two in the sequential proceedings (Tr. 13) but found that these impairments did not meet or equal an impairment "listed" in the Commissioner's regulations at step three. Tr.

---

[2]Syncope is the medical term describing temporary loss of consciousness due to sudden decline in blood flow to the brain ("fainting"). Nat'l Inst. of Health, Nat'l Inst. of Neurological Disorders and Stroke, "Syncope Information Page," available at http://www.ninds.nih.gov/disorders/syncope/syncope.htm (last visited September 9, 2011).

15-16.  The ALJ found that Wallace retained the following RFC:

> [T]o stand and/or walk for about six hours in an eight hour workday
> and sit for about six hours in an eight hour workday.  The claimant
> can lift and/or carry fifty pounds occasionally and twenty-five pounds
> frequently.  The claimant can frequently stoop, crouch, crawl, kneel,
> balance, and climb ramps or stairs.  The claimant can never climb
> high ladders.  The claimant should avoid any exposure to hazards,
> such as unprotected heights and moving machinery.  Tr. 16.

The ALJ found Wallace unable to perform his past relevant work, but concluded he could perform

work in the national economy at step five in the sequential proceedings.  Tr. 18.  The ALJ

consequently found Wallace not disabled.  Tr. 19.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied

proper legal standards and the findings are supported by substantial evidence in the record.  42

U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193

(9th Cir. 2004).  "Substantial evidence" means "more than a mere scintilla, but less than a

preponderance."  *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009)

(quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  It is "such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion."  *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion.

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Reddick v. Chater*, 157 F.3d 715,

720 (9th Cir. 1998)).  The reviewing court may not substitute its judgment for that of the

Commissioner.  *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir.

2006)), *see* also *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  Variable interpretations

of the evidence are insignificant if the Commissioner's interpretation is a rational reading.  *Id.*; *see*

*also Batson*, 359 F.3d at 1193. However, this court cannot now rely upon reasoning the ALJ did not

assert in affirming the ALJ's findings. *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332

U.S. 194, 196 (1947)).

## ANALYSIS

Wallace asserts that the ALJ improperly assessed (1) his credibility; (2) the opinion of

treating physician Timothy Gray, D.O.; (3) the testimony of two witnesses; and (4) his findings at

step two in the sequential disability analysis. Wallace consequently asserts that the ALJ should have

found him disabled.

## I.    Credibility

Wallace argues that the ALJ's credibility analysis improperly evaluated his testimony

regarding his activities of daily living, and improperly cited Dr. Gray's opinion. Pl.'s Opening Br.

24-25.

### A.    Wallace's Testimony

The record shows that Wallace completed a "Function Report," which described his activities

of daily living on June 8, 2006. Tr. 127-34. He wrote that "every day is different," but he sometimes

sleeps 12 to 15 hours per day. Tr. 127. Wallace watches television and walks around his house for

exercise, and does dishes. *Id.* He plays with his pets, but his wife oversees their care because he

may be too tired to do so. Tr. 127-28. He sometimes requires help dressing, sometimes skips meals,

and sometimes his wife must help him off the couch. Tr. 128. Wallace's wife cooks and completes

house and yard chores, although he helps with chores some days. Tr. 129. His wife double checks

everything to do with money, and Wallace no longer hunts or completes building projects. Tr. 131.

Wallace indicated limitations in lifting, walking, stair climbing, squatting, sitting, bending, kneeling,

and standing. Tr. 132. He also endorsed limitations in understanding, following instructions, seeing, hearing, talking, completing tasks, using his hands, and in memory. *Id.* He can walk no further than "maybe out of the shower" before needing rest. *Id.*

Wallace also testified at his February 18, 2009, hearing. Tr. 24-58. He stated that he can bathe and dress without help. Tr. 27. He said he "built a - - my bed frame over the winter," which took him a almost a year to complete. Tr. 27-28. Based upon his doctor's recommendation Wallace no longer drives, but goes shopping. Tr. 27. On a typical day he tries to get out of bed and "out in my shop to try and do something," but some days he does not go out until 1:00. Tr. 28.

Wallace said he has trouble "thinking things through, focusing on what I need to do," and said "it's really hard to concentrate on what my next step is." Tr. 29. He subsequently described various difficulties in executing things he wants to do, in focusing, and in completing tasks. Tr. 29-30. Fixing his household heater took him "six, eight months," and he often forgets whether he brushed his teeth each day. Tr. 31-32. Wallace testified that he cooked Valentine's Day and Thanksgiving dinners, and can make Easter bread and casseroles, although "this takes more effort to think through" than it used to. Tr. 33. He pays bills online, but does not balance a checkbook. Tr. 34.

Wallace also testified that he generally can remember what he hears, but some days "I have episodes my wife keeps telling me that I said different things or did things that I don't remember." Tr. 36. He trained his dog to bring him his blanket, and to bark when he calls his wife. Tr. 36-37. Wallace subsequently described "episodes," where, in response to questioning, he said he does not know whether or not he is conscious. Tr. 37. After these episodes, his hands, shoulders, and legs

"ache really bad" and he may take Vicodin.  *Id.*  Finally, he testified that he walks around Home Depot for an hour once or twice a week.  Tr. 55-56.  Wallace stated that he can stand at a kitchen counter for an hour and a half on a normal day, and fifteen minutes on a bad day.  Tr. 56.

## B.    Credibility Standards

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence, and other evidence." 20 C.F.R. § 404.1529(a).  Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible.  *Lingenfelter*, 504 F.3d at 1036, citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995), *citing Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991), *en banc*.  The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations.  *Smolen*, 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant.  *Id.*  The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence."  *Robbins*, 466 F.3d at 883; *see also Bunnell*, 947 F.2d at 346-47.

7 - FINDINGS AND RECOMMENDATION

### C.    Analysis

The ALJ first noted Wallace's alleged limitations due to blackouts and fatigue, including difficulty concentrating, memory problems, exertional limitations, and his reported need to rest after a half hour of activity. Tr. 16. The ALJ's subsequent credibility discussion cited Wallace's activities of daily living and the medical record.

### 1.    Activities of Daily Living

The ALJ noted Wallace's statements that he could go outside daily, drive, shop, watch television, and engage in social activities which included going to church. Tr. 17. The ALJ also cited Wallace's testimony that he could pay bills online, cook, and made a bedframe. *Id.* The ALJ found this activity inconsistent with Wallace's testimony that he could not be active more than a half hour before requiring rest, and that he had difficulty with concentration and memory. Tr. 16-17. The ALJ may cite a claimant's testimony that is inconsistent with a claimant's alleged limitations in finding the claimant not entirely credible. *Batson*, 359 F.3d at 1196. The ALJ's citation to Wallace's activities should therefore be affirmed.

Wallace now asserts that the ALJ selectively evaluated his testimony. Pl.'s Opening Br. 24. The record discussed above shows that Wallace testified to the activities described by the ALJ, but also testified that his activities were more limited than the ALJ inferred. When two reasonable interpretations of a claimant's activities arise, this court must defer to the ALJ's interpretation of those activities. *Rollins v. Massinari*, 261 F.3d 853, 857 (9th Cir. 2001). Because Wallace offered contradictory statements regarding the extent of his limitations, the ALJ's interpretation of his activity was based upon a reasonable inference. The ALJ's conclusions regarding Wallace's

activities of daily living should therefore be affirmed for this reason also.

### 2.     Medical Record

Wallace contends that the ALJ improperly cited treating physician Dr. Gray's report that he can "work when feeling fine."  Pl.'s Opening Br., 25 (citing Tr. 17).  This evidence is discussed in conjunction with Dr. Gray's opinion.  *Infra*, 12-14.

The ALJ's remaining credibility analysis discussed Wallace's comprehensive medical record. Tr. 17.  Wallace does not challenge the ALJ's citation to this record in his credibility analysis.  The ALJ's credibility analysis may cite a claimant's medical record in conjunction with other factors. *Smolen*, 80 F.3d at 1284; *see* also *Robbins*, 466 F.3d at 883 (cautioning that the ALJ may not rely "solely" upon the medical record in finding claimant not credible).  Because the ALJ's findings are based upon the record, and unchallenged by Wallace, the ALJ's citation to the medical record in his credibility analysis should be affirmed.

In summary, the ALJ's credibility findings should be affirmed.

## II.   Medical Source Statements

Wallace challenges the ALJ's evaluation of treating physician Dr. Gray's opinion, as well that of as consulting neurologist Timothy Willkinson, M.D., and examining psychologist Dale Brounstein, M.D.

### A.     Standards: Medical Source Statements

Disability opinions are reserved for the Commissioner.  20 C.F.R. § 404.1527(e)(1).  When making that determination, the ALJ generally must accord greater weight to the opinion of a treating physician than to that of an examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

The ALJ must also generally give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician's opinion in favor of an examining physician's opinion. *Id.* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The opinion of a reviewing physician may not constitute substantial evidence when it contradicts the opinion of a treating or examining physician. *Lester*, 81 F.3d at 831.

### B.    Dr. Gray's Opinion

The ALJ twice discussed Dr. Gray's opinion, separately addressing Dr. Gray's opinion regarding Wallace's alleged depression and Dr. Gray's opinion that Wallace was unable to work.

### 1.    Dr. Gray's Opinion Regarding Depression

Dr. Gray completed a form submitted to Wallace's counsel regarding Wallace's alleged mental impairments. Tr. 525-27. He endorsed "moderate" limitations in Wallace's ability to remember locations and work-like procedures, as well as to understand, remember and carry out detailed instructions, and make simple work-related decisions. *Id.* Dr. Gray endorsed "marked" limitations in Wallace's ability to maintain attention and concentration for extended periods, perform activities within a schedule, sustain an ordinary routine without special supervision, work in proximity to others without distraction, and complete a normal workday or workweek without interruptions from psychological symptoms. *Id.*

The ALJ noted Dr. Gray's depression diagnosis, and Dr. Gray's associated opinion that Wallace had moderate and marked mental limitations in performing work activities. Tr. 15. The

ALJ subsequently discussed Wallace's activities of daily living, and concluded that this evidence "does not support that [Wallace] has more than mild limitations in performing activities of daily living, social functioning, and concentration, persistence, and pace." *Id.* Wallace now asserts that this analysis improperly rejected Dr. Gray's opinion so far as it pertained to his alleged depression. Pl.'s Opening Br. 17.

The record shows that Dr. Gray treated Wallace between June 2006 and November 2008. Tr. 413, 636. During this time, Dr. Gray diagnosed depression on several occasions. Tr. 404, 646, 653, 661, 664-65. Dr. Gray prescribed Wellbutrin on September 12, 2007 (Tr. 653), and suggested that Wallace "restart" antidepressant therapy on January 4, 2008. Tr. 646. Dr. Gray assessed no work-related limitations associated with this diagnosis. The ALJ's conclusion that Dr. Gray's record do not support more than a "mild" restriction in functioning due to his depression is therefore based upon the record and should be affirmed.

Wallace also argues that, in reference to his alleged depression and activities of daily living, the ALJ concurrently "failed to show how these skills meet the transferability threshold" regarding a finding that Dr. Gray's indicated limitations and transferability to a work setting. *Id.* (citing *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007)). Wallace's indicated citation illustrates the role of a claimant's activities of daily living in an ALJ's credibility analysis. *Orn*, 495 F.3d at 639. It does not address the standards under which an ALJ may reject a physician's opinion or discuss the manner in which a physician's opinion is properly supported. This submission should therefore be rejected.

Finally, Wallace asserts that "the ALJ has pointed to nothing showing that Dr. Gray disbelieved his patient has debilitating depression." Pl.'s Opening Br. 18. The ALJ made no

findings regarding Dr. Gray's own beliefs and Wallace's alleged depression. Wallace therefore fails to establish reversible error on this point.

In summary, Wallace fails to show that the ALJ improperly evaluated Dr. Gray's opinion so far as it pertained to his depression.

### 2.    Dr. Gray's Disability Opinion

The ALJ also discussed Dr. Gray's opinions that Wallace is unable to work.  Tr. 17.  He noted Dr. Gray's statement that Wallace cannot drive, could not work at a computer without falling asleep, and that Wallace would fall asleep while talking.  *Id.*   The ALJ also cited Dr. Gray's statement that Wallace functioned normally some days, and had no limitations when he was "feeling fine," but that he would sit and stare into space at other times.  *Id.*  In conclusion, the ALJ found Dr. Gray's opinion that Wallace is unable to work unsupported by the objective medical evidence.  *Id.*

The record shows that Dr. Gray completed disability forms in conjunction with Wallace's applications for private long term disability insurance.  Tr. 597, 615. The first of these applications, dated June 5, 2008, was based upon Dr. Gray's "syncope" diagnosis. Tr. 597.  Dr. Gray's treatment notes show that he repeatedly assessed "syncope" and daytime sleepiness, and, at times three instances in 2006, concurrently opined that Wallace was unable to work.  Tr. 405,407, 410.

The Commissioner's regulations require that a claimant show inability to work for at least twelve months to establish disability.  20 C.F.R. § 404.1509.  Dr. Gray's chart notes, to the extent they support his 2008 opinion regarding Wallace's inability to work due to syncope, do not establish that Wallace met the Commissioner's durational requirement.  Further, the 2006 treatment notes are not closely correlated to Dr. Gray's 2008 letter.  The ALJ therefore appropriately found Dr. Gray's

2008 disability not properly supported.

Dr. Gray's second long term disability form, dated January 1, 2009, was based upon Lyme disease. Tr. 615. The ALJ found that the record did not support this diagnosis. Tr. 14. Wallace does not challenge this finding. The ALJ's findings pertaining to Wallace's Lyme disease, and any associated opinions from Dr. Gray, are therefore affirmed.

Finally, on May 13, 2009, Gray wrote a letter, explaining:

> Mr. Wallace is a danger to himself and to others should he have a syncopal episode while at work. He is no longer driving . . . . His life has completely changed due to these attacks. Because he has syncopal episodes at any time, no employer would be willing to take the risk of hiring him and having syncopal episodes in their facility. Tr. 734.

This letter was produced after the ALJ issued his March 25, 2009, decision, and was accepted into the record by the Appeals Council. Tr. 4. This court reviews such evidence. *Ramirez v. Shalala*, 8 F.3d 1449, 1454 (9th Cir. 1993). However, the record does not establish that Dr. Gray's May 2009 letter was properly supported. Dr. Gray restrained his remarks to speculation that "no employer would be willing" to hire Wallace, and did not say how often Wallace experiences syncopal episodes that would interfere with his ability to perform work-related functions. For these reasons, Dr. Gray's May 2009 letter does not disturb the ALJ's March 2009 conclusion that Dr. Gray's disability opinions were not properly supported.

## C.    Opinions of Drs. Wilkinson and Broustein

Wallace states that the ALJ ignored neurologist Dr. Wilkinson's opinion that his disorder is psychogenic. Pl.'s Opening Br. 20. Wallace provides no citation with his argument. The record shows that neurologist David Wilkinson, M.D., assessed Wallace on January 14, 2008. Tr. 552-555.

Dr. Wilkinson examined Wallace and concluded, "The patient has quite unusual spells consisting of either syncope or a sleep attack which sound [sic] to come on and last 30 to 60 minutes." Tr. 554. Dr. Wilkinson stated "it is not clear whether there is a unifying neurological diagnosis for his spells." *Id.* Dr. Wilkinson recommended that Wallace obtain EEG and neuro-autonomic testing, as well as a sleep study. Tr. 554-55. Dr. Wilkinson made no inferences or comments regarding any psychiatric diagnosis. Wallace's submission on this matter should therefore be rejected.

Finally, Wallace cites examining psychologist Dr. Broustein's report in his assertion that ALJ improperly assessed his depression. Pl.'s Opening Br. 18. Dr. Broustein performed a psychological evaluation in conjunction with Wallace's planned gastric bypass surgery. Tr. 723. He concluded that Wallace "looks toward somatic correction in alleviation of . . . his emotional concerns," and has "probable lurking depression and grief." Tr. 725. This evidence does not establish work-related impairment relating to Wallace's alleged depression, and is therefore neither significant nor probative on this issue.

### D.    Medical Evidence Conclusion

In summary, Wallace fails to establish reversible error in the ALJ's assessment of the medical evidence. The ALJ's findings regarding Drs. Gray, Wilkinson, and Broustein are based upon the record and the correct legal standards. These findings should therefore be affirmed.

## III.    Step Two Findings

Wallace asserts that the ALJ should have found his alleged mental impairment, chronic fatigue syndrome, and chronic pain syndrome "severe" at step two in the sequential proceedings. Pl.'s Opening Br. 21.

**A.      Step Two Standards**

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act.  20 C.F.R. § 404.1520; *Tackett*, 180 F.3d at 1098.  Each step is potentially dispositive.  *Id.*  At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month durational requirement. 20 C.F.R. § 404.1509; 404. 920(a)(4)(ii).  If the claimant does not have such a severe impairment, he is not disabled.  *Id.*

Step two findings must be based upon medical evidence.  20 C.F.R. § 404.1520(a)(ii).  The Commissioner's regulations instruct that an impairment is "not severe" if it "does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).  The step two inquiry is a "threshold inquiry."  *Bowen*, 482 U.S. at 153.  Omissions at step two are harmless if the ALJ's subsequent evaluation considered the effect of the impairment omitted at step two. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

**B.      Analysis**

**1.      Mental Impairment**

Wallace asserts that the ALJ should have found his depression, or, alternatively, his alleged somatoform and conversion disorders, "severe" at step two.  Pl.'s Opening Br. 21.  Wallace first cites Dr. Gray's opinion, asserting that Dr. Gray found his depression "present and disabling."  Id. The ALJ properly rejected Dr. Gray's disability opinon, as discussed above, and this analysis will not be revisited.  Further, Wallace's present argument points to no work-related limitations stemming from his depression.  A "severe" impairment must significantly limit a claimant's physical or mental

ability to do basic work activities.  20 C.F.R. § 404.1521(a).  Because Wallace presently asserts no such limitations, this argument should be rejected.

Wallace's next assertion, that Dr. Broustein "found likely depression of primary concern," is also not based upon the record, as discussed above, and will not be discussed again.  Wallace subsequently asserts that examining neuropsychologist Larry Friedman, Ph.D., "found a profile consistent with somatic focus and conversion tendencies."  Pl.'s Opening Br. 21.  Dr. Friedman evaluated Wallace in May 2009, and noted that somatic disorders are frequently associated with Wallace's psychological profile (Tr. 740), but made no such diagnosis and assessed no associated limitations.  This submission also fails.

Wallace also cites the opinion of cardiothoracic surgeon Anthony Furnary, M.D., regarding "an exceedingly high endorsement of symptoms."  The record shows that cardiothoracic surgeon Dr. Furnary evaluated Wallace in conjunction with his lung nodule.  Tr. 379-84.  Dr. Furnary noted that Wallace endorsed various symptoms during the course of this examination.  Tr. 382.  Dr. Furnary did not characterize Wallace's response as "exceedingly high," and made no comment regarding Wallace's alleged mental impairments.  *Id.*  Wallace's submission that Dr. Furnary's opinon supports his allegation of mental and somatic impairments at step two is also not based upon the record.

Wallace further argues that the Commissioner's submission regarding his failure to seek treatment for his mental impairments is flawed.  Pl.'s Reply Br. 3.  Frequency of treatment is not the determinative issue at step two; at step two, the claimant must establish workplace limitations relating to his alleged impairment.  Wallace has failed to do so, for the reasons just discussed.  In summary, the ALJ's step two findings regarding his alleged mental impairments should be affirmed.

### 2.    Chronic Fatigue Syndrome and Chronic Pain Syndrome

Wallace asserts that the ALJ should have found his alleged chronic fatigue syndrome and chronic pain syndrome severe.  Wallace's step two argument points to no evidence of record addressing his chronic fatigue syndrome or its alleged limitations.  Pl.'s Opening Br. 21-22.  This court therefore cannot find the ALJ erred in finding this impairment not severe.

Wallace states only that Dr. Gray treated him for flank and abdominal pain.  *Id.* at 22.  The record confirms that Dr. Gray noted Wallace's complaints of stomach pain following the holidays on January 4, 2008.  Tr. 646.  Dr. Gray diagnosed chronic pain syndrome on January 11, 2008, but offered no explanation for this diagnosis, and assessed no concurrent limitations.  Tr. 645.  Dr. Gray later noted Wallace's complaint of flank pain on June 5, 2008, and made a note citing a possible urinary tract infection.  Tr. 641.  Most crucially, Dr. Gray did not assess any limitations associated with his chronic pain notations on either of these dates.  Wallace therefore fails to establish that the ALJ erroneously addressed this his pain disorder as it pertained to his flank and abdominal pain at step two.

In summary, Wallace fails to establish that the ALJ erred in his analysis at step two in the sequential proceedings.

## IV.    Lay Testimony

Wallace asserts that the ALJ improperly addressed testimony submitted by his wife, Judith Wallace.  Pl.'s Opening Br. 25.

### A.    Standards: Lay Testimony

The ALJ has a duty to consider lay witness testimony.  20 C.F.R. §§ 404.1513(d);

404.1545(d); *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2008).  Friends and family members

in a position to observe the claimant's symptoms and daily activities are competent to testify

regarding the claimant's condition.  *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  The

ALJ may not reject such testimony without comment and must give reasons germane to the witness

for rejecting her testimony.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  The ALJ may

reject lay testimony predicated upon the testimony of a claimant found not credible.  *Valentine v.*

*Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

###    B.    Analysis

The ALJ cited Judith Wallace's report of Wallace's activities of daily living.  Tr. 17.  The

ALJ concluded that "it is largely based upon the claimant's subjective report of difficulties and

limitations.  The evidence also supports that despite the claimant's symptoms, he is able to engage

in a wide range of activities."  *Id.*

Wallace's argument states only that the ALJ "failed to consider the similarities between Mrs.

Wallace's testimony, other lay witness testimony, and the observations of multiple medical

professionals and Ms. Wright.  As before, he has failed to address properly evidentiary content and

tone."  *Id.* (citing *Reddick*, 157 F.3d at 722-24).  Wallace does not point to Judith Wallace's

testimony, or explain the effect of the ALJ's alleged error.  Wallace's indicated citation discusses

a claimant's report of activities of daily living so far as they pertain to the claimant's testimony; it

does not address lay witness testimony.

The ALJ need only provide reasons "germane" to the witness in rejecting her testimony.

*Bruce*, 557 F.3d at 1115; *Nguyen*, 100 F.3d at 1467.  Here, the ALJ found Judith Wallace's report

18 - FINDINGS AND RECOMMENDATION

of Wallace's activities based upon Wallace's own subjective reports, and found that the record contradicted Judith Wallace's testimony.  Tr. 17.

Judith Wallace wrote that Wallace stays on the couch most of the day, unless they go shopping or attend church.  Tr. 142.  She helps Wallace "everyday to check all is well," and sometimes helps him dress or care for his hair.  Tr. 143.  Judith Wallace does all house and yard work because Wallace is too weak and it "hurts his joints."  Tr. 145.  She wrote that Wallace has brain fog and "tiredness," and has limitations in lifting, walking, stair climbing, squatting, sitting, bending, kneeling, and standing, as well as in seeing, talking, hearing, completing tasks, understanding, following instructions, using his hands, and in memory and concentration.  Tr. 147. Finally, Judith Wallace wrote that Wallace may require rest after walking five minutes, and that he may need to rest ten minutes or "hours."  Tr. 147.

This testimony reflects Wallace's own testimony, discussed above.  *Supra*, 5-9.  The ALJ may reject lay testimony predicated upon reports of a claimant found not credible, so long as the ALJ identifies such reasoning.  *Valentine*, 574 F.3d at 694.  The ALJ's conclusions on this matter are based upon the record, and were appropriately articulated by the ALJ.  The ALJ's findings regarding Judith Wallace's testimony should therefore be affirmed.

## V.    Testimony of Peggy Wright, CRC

Finally, Wallace asserts that a report prepared by Peggy Wright, Certified Rehabilitation Counselor, should have been included in his RFC and, further, establishes that he is disabled.  Pl.'s Opening Br. 22.  The Commissioner responds that the record contains no evidence establishing Wright's credentials as an expert, and that, further, Wright's testimony is "incompetent evidence"

and inadmissible under the Federal Rule's Evidence.  Def.'s Br., 8.  The Commissioner's argument

is incorrect: the Act clearly states that "evidence may be received at any hearing before the

Commissioner of Social Security even though inadmissible under rules of evidence applicable to

court procedure."  42 U.S.C. § 405(b); *see also McCarthy v. Apfel*, 221 F.3d 1119, 1125 n8 (9th Cir.

2000) (*citing* same).

Wallace does not respond to these arguments, but replies that the Appeals Council omitted

Wright's resume from the record, and argues that Wright's observations are consistent with the

medical record.  Pl.'s Reply Br. 4.

Subsequent to these submissions, both parties stipulated that the record should be amended

to include a Supplemental Transcript including Wright's resume.  Joint Decl. of Counsel in Supp.

of Mot. to Amend and Correct the Tr. (Docket #24).   The Commissioner acknowledges that the

Appeals Council inadvertently omitted Wright's resume from the official transcript.  *Id.* at 2.  The

reviewing court considers evidence contained in such supplemental records not before the ALJ.

*Ramirez*, 8 F.3d at 1454.

Wallace clearly asserts that Wright's report should be included in his RFC assessment.  Pl.'s

Opening Br. 22.  The heading in Wallace's brief and subsequent argument ask the court to consider

Wright's report in the context of Wallace's RFC ("Failing to consider this evidence, the ALJ has not

considered properly functional capacity").  *Id.*  The ALJ considers medical and any lay witness

testimony in construing a claimant's RFC, 20 C.F.R. §§ 404.1545(a)(3), and considers vocational

expert testimony at step five in the sequential proceedings.  20 C.F.R. § 404.1566(d-e).  Because

Wallace asks the court to consider Wright's report in his RFC analysis, the court will not address the

matter of Wright's testimony as a vocational expert at step five in the sequential proceedings.

Between March 2 and 5, 2009, Peggy Wright, Certified Rehabilitation Counselor, evaluated Wallace at DePaul Industries following a referral from Wallace's counsel.  Tr. 192-99.  Wright performed various academic, psychometric, and skill-based tests to evaluate Wallace's workplace skills.  *Id.*  In each of these she noted that Wallace "reported" fatigue or pain associated with the activity.  *Id.*  Wallace concluded her report by listing "reported and/or observed" limitations:

- Vision: blurring, tunnel vision, light sensitivity
- Mental confusion in processing and responding to questions
- Poor recall
- Hand tremor and joint pain
- Pain and reduced strength to the hands, arms, shoulders and back
- Headaches
- Fatigue
- Episode of sleep or loss of consciousness.  Tr. 199.

Wright concluded, "It is therefore the evaluator's professional opinion that Ken is not currently competitively employable." *Id.*

The ALJ did not discuss Wright's report, although it was in the record before him.  Tr. 192-99.  The ALJ must explain rejection of significant and probative evidence. *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).  The ALJ may reject a claimant's poor performance in volitional testing if he finds the claimant not credible, *Thomas v. Barnhart*, 278 F.3d 947, 953 (9th Cir. 2002), and may reject lay witness observations that are predicated upon reports of claimant properly found not credible.  *Valentine*, F.3d, at 685.  However, the ALJ must make such findings, *id.*, and this court may not rely upon reasoning the ALJ did not assert.  *Bray*, 554 F.3d at 1225-26; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

The ALJ's omission of testimony is not harmless unless the reviewing court can confidently

21 - FINDINGS AND RECOMMENDATION

conclude that no reasonable ALJ, when fully crediting the omitted testimony, would reach a different disability determination.  *Stout v. Comm'r*, 454 F.3d 1050, 1055-56 (9th Cir. 2006).  Because Wright's report indicates that Wallace reports being nearly incapacitated, this court cannot reach a conclusion that the ALJ's omission of Wright's report is harmless.

Nor can this court determine the effect of Wright's report upon the ALJ's step five findings. Neither Wallace nor the ALJ solicited testimony from the vocational expert at Wallace's hearing regarding the limitations assessed by Wright.  Tr. 49-54.  Following the ALJ's interrogation of the vocational expert addressing limitations expressed in Wallace's RFC assessment, Wallace's counsel instead stated, "I don't have any questions. . . ."  Tr. 54. Wallace's present conclusion that "no more proof" is required regarding Wright's report and a finding of disability is therefore not based upon the record.

Neither party now points the court to authorities authorizing the ALJ to unilaterally accept alleged vocational expert testimony proffered by the claimant when it contradicts vocational expert testimony proffered at a claimant's hearing.  When an ALJ and counsel both fail to elicit testimony from a vocational expert regarding a claimant's alleged limitations, the matter must be remanded for further proceedings to obtain such testimony.  *Harman v. Apfel*, 211 F3d 1172, 1180 (9th Cir. 2000). The other party may then seek to rebut.  *Id.*

In such instances, award of benefits is inappropriate, and the matter is remanded for further proceedings to address the improperly omitted testimony.  *Id.*; *see* also *Luna v. Astrue*, 623 F3d 1032, 1035 (9th Cir. 2010).  This court therefore recommends the matter be remanded for further proceedings.  If necessary, the ALJ must then revise his RFC determination.  Finally, the ALJ must

make adequate step four and five findings incorporating any revised findings.

## CONCLUSION AND RECOMMENDATION

The Commissioner's decision that Wallace did not suffer from disability, and is not entitled to benefits under Title XVI of the Social Security Act, is based upon correct legal standards and supported by substantial evidence, except as noted in the analysis pertaining to Peggy Wright, CRC. The Commissioner's decision should be reversed and remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) to properly address Peggy Wright's report.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due **November 8, 2011**. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, any party may file a response by **November 22, 2011**. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

IT IS SO ORDERED.

DATED this 24th day of October, 2011.


 /s/ John V. Acosta

John V. Acosta
United States Magistrate Judge


23 - FINDINGS AND RECOMMENDATION